THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LORENZO KING, Defendant-Appellant.

First District (1st Division)   No. 77-1939

Opinion filed July 5, 1978.

Foss, Schuman & Drake, of Chicago (William J. Stevens, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Lorenzo King (defendant) was charged with robbery in violation of section 18—1 of the Criminal Code of 1961. (Ill. Rev. Stat. 1973, ch. 38, par. 18—1.) After a bench trial, defendant was convicted of robbery and sentenced to two to six years imprisonment. Defendant appeals, arguing that his motion to suppress evidence should have been granted, he was not proved guilty of robbery beyond a reasonable doubt, and he was not accountable for his companion's criminal conduct.

The record discloses: Martin Barrett, a Chicago police officer, testified that he and his partner, Abel Presas, were on duty at about 1 a.m. on July 9, 1975, in the 800 block of North Dearborn Street, in Chicago. They saw two men run from a parking lot between two buildings. One of the men, later identified as defendant Lorenzo King, was carrying a yard-long stick. Both men turned toward the officers, stopped running and began to walk. Barrett told his partner to stop the two men. Toward the rear of the parking lot Barrett saw Samuel Montes, who, although a mute, communicated to Barrett that he had been robbed. Barrett took Montes to Dearborn Street, where Montes identified defendant as the man who had robbed him. The men were handcuffed and placed in the squad car. Montes communicated to Barrett that 40 one-dollar bills were taken from him. After defendant was removed from the squad car, 40 one-dollar bills were found stuffed in the place where defendant had been sitting. At the time Barrett and his partner stopped defendant, they had no warrant for his arrest nor had they seen him commit a crime.

Officer Abel Presas testified that while on duty with his partner on July 9, 1975, at about 1 a.m., he was in an unmarked police car in the 800 block of North Dearborn. He saw two men run from a parking lot. One of them, later identified as the defendant, was carrying a long stick. When the two men saw the police car, they paused momentarily and then began walking. Barrett walked toward the parking lot, while Presas asked the two men to come back to him. They turned and walked toward him. He showed them his police identification, asked defendant to drop the stick, and asked them to identify themselves. After a short time, Barrett

returned with Montes. Barrett said there had been a robbery. The two men Presas had asked for identification were placed under arrest, patted down and put in the back seat of the squad car. A short time later defendant was taken from the car and they recovered 40 one-dollar bills from the back seat of the car where he had been sitting. They had no warrant for defendant's arrest and had not seen defendant commit a crime.

Samuel Montes, who testified by written answers and by indications of his head, related that he was in the alley behind 818 North Dearborn, Chicago, at approximately 12:50 a.m. on July 9, 1975. Defendant and another man approached him. Defendant threatened him with the long stick he had and said he would kill Montes if he did anything. Then the defendant stood next to Montes and took 40 one-dollar bills from Montes' left coat pocket. The two men walked east toward Dearborn Street. A short time later a police officer met Montes in the alley. The officer led Montes to Dearborn Street, where he saw the defendant. Montes testified that although he subsequently had told an assistant State's attorney that King was not the man who robbed him, he later told the assistant State's attorney he had said this because he was confused, but that he was now certain King was the right man.

Defendant argues that he was improperly stopped by the police officers because they could not and did not reasonably infer from the circumstances that defendant and his companion were committing, about to commit or had committed an offense.

■■ The Code of Criminal Procedure of 1963 provides (Ill. Rev. Stat. 1975, ch. 38, par. 107—14):

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

The above-quoted statute codifies the decision in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. (*People v. McGowan* (1977), 69 Ill. 2d 73, 77, 370 N.E.2d 537.) The facts and circumstances must be specific and articulable to be reasonable. (*Terry v. Ohio* (1968), 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909, 88 S. Ct. 1868, 1883.) The *McGowan* court said that the facts and circumstances, viewed as a whole, must lead the officer to conclude that the situation is "so far removed from the ordinary that

any competent police officer would be expected to act quickly to maintain the status quo, rather than to observe the situation further." 69 Ill. 2d 73, 78.

■ In the present case, the officers were in a high crime area at approximately 1 a.m. They had recently made a robbery arrest in the same vicinity. They observed two men, one of them carrying a long stick, running from a parking lot between two buildings. When the men saw the officers in their squad car, they slowed to a walk. The officers correctly requested that defendant and his companion halt and identify themselves, given the area the officers were in, the time of the night, the running and slowing of the two men and the carrying of the long stick. We hold that there were sufficient articulable and specific facts and circumstances from which to infer that a crime had been committed. *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537.

■■ Defendant also contends that he was arrested when Officer Presas requested that he halt and identify himself. An arrest is made when a person is informed of a violation by the police, submits to police control and the evidence clearly shows that the officers intended to effect an arrest and the person understood the officers' intent. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 165, 368 N.E.2d 870; *People v. Clark* (1956), 9 Ill. 2d 400, 404, 137 N.E.2d 820.) Officer Presas did not inform defendant of a violation. In fact, he was not aware that any crime had been committed. Presas only asked defendant to identify himself. The officer did not try to restrain defendant. Nothing in the record indicates that Presas intended to effect defendant's arrest prior to Barrett's return with the victim. Clearly, defendant was not unlawfully arrested by Presas' request for him to halt and identify himself. The trial court correctly denied defendant's motion to suppress evidence.

■■ Defendant contends that he was not proved guilty beyond a reasonable doubt because the trial testimony of the victim was directly contradicted by his prior statements. At trial, Montes positively identified defendant as the man who had robbed him. Defense counsel introduced Montes' prior statement to an assistant State's Attorney that King was not the man who robbed him. The State then adduced Montes' subsequent pretrial statement in which he stated that he had said King was not the man who robbed him because he was confused. He also told the assistant State's attorney that he was sure that King had robbed him. The credibility of the witnesses and the weight to be given their evidence are matters for the trier of fact. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) This record does not disclose any reason for this court to substitute its judgment for that of the trier of fact. Montes' trial testimony that King robbed him is corroborated by the officers' testimony that King was carrying the stick used to threaten Montes and the recovery of the

proceeds of the robbery from a part of the back seat of the police car to which only defendant had access.

██ Finally, defendant contends that if Montes' pretrial statement that King did not rob him is taken as the correct version of the incident, there was insufficient evidence to find defendant guilty on an accountability theory. We disagree. Montes testified that defendant and another man approached him, defendant threatened him with a long stick, said he would kill Montes if he did anything, stood next to Montes and took 40 one-dollar bills from Montes' coat pocket. The two men then walked away. Clearly, even if defendant's companion took the money from Montes, there is sufficient evidence to find defendant guilty on an accountability theory. Defendant was seen fleeing from the scene of the robbery, carrying the stick that was used to threaten Montes. The stolen money was recovered from the back seat of the police car where defendant was seated. The trial court correctly found defendant guilty of robbery on an accountability theory.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and BUCKLEY, J., concur.