PEOPLE v CARTER

Docket No. 77-5039. Submitted September 4, 1979, at Detroit.—Decided April 21, 1980. Leave to appeal applied for.

Defendant, Chauncey Carter, was convicted of possession of heroin, carrying a concealed weapon and felony-firearm in the Recorder's Court of Detroit, Patricia J. Boyle, J. At defendant's preliminary examination, officer Ronald Smith of the Detroit Police Department testified that on the night in question he was on routine patrol in the area of Gladstone and Woodrow Wilson in Detroit. Three other police officers were with Officer Smith in his semimarked police car. As the car approached 1620 Gladstone, Officer Smith saw defendant walking away from the apartment building at that address. When defendant reached the sidewalk, he looked in the direction of the police car, turned around and ran toward the apartment building. Officer Smith followed. When defendant reached the building he opened the door and entered a foyer area. As the door was closing behind defendant, Officer Smith saw him throw down a plastic bag. The officer picked up the bag and saw that it contained a brown substance which he suspected was heroin. Defendant was placed under arrest. Officer James Irons conducted a patdown search of defendant and took a .25-caliber loaded automatic pistol from defendant's waistband. Officer Smith also testified that there had been numerous rapes in the area and he had received reports of breakings and enterings in the building at 1620 Gladstone. The trial court refused to suppress the heroin. Defendant appeals. *Held:*

1. The Court of Appeals will not overturn a ruling of a trial court at a hearing on a motion to suppress evidence unless that ruling is found to be clearly erroneous. A police officer's investi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 881.
[2] 68 Am Jur 2d, Searches and Seizures §§ 41-44, 56, 102.
[3] 68 Am Jur 2d, Searches and Seizures §§ 41-44.
[4] 5 Am Jur 2d, Appeal and Error § 772.
   81 Am Jur 2d, Witnesses § 465.
[5] 21 Am Jur 2d, Criminal Law §§ 188, 189.
[6] 21 Am Jur 2d, Criminal Law §§ 182, 188, 189.

gatory pursuit of a defendant must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures, and a reviewing court must determine if the record reveals specific, articulable facts which, taken together with rational inferences therefrom, reasonably warranted the protested intrusion. Police officers who, at nighttime in an area where several rapes had occurred, encountered a person who, upon seeing the officers, ran toward a building which had been the object of breakings and enterings were justified in investigating further, and heroin discovered in the course of that further investigation was properly admitted at the trial of that person for possession of heroin.

2. The striking of testimony of persons who refuse to answer questions on cross-examination is a matter best left to the sound discretion of the trial court.

3. Conviction of possession of heroin, carrying a concealed weapon and felony-firearm, all arising out of a single occurrence, violates the constitutional prohibition against double jeopardy because the Legislature did not clearly authorize separate convictions for both carrying a concealed weapon and felony-firearm. In such a case the carrying a concealed weapon conviction should be vacated.

Affirmed in part and reversed in part.

MacKenzie, J., dissented in part. She would hold that the fact that the Legislature expressly prohibited the crime of carrying a concealed weapon from being an underlying offense of felony-firearm does not mean that there cannot be convictions of both where another felony serves as the underlying offense of the felony-firearm conviction and would affirm all three convictions.

## OPINION OF THE COURT

1. APPEAL — CRIMINAL LAW — SUPPRESSION OF EVIDENCE — CLEARLY ERRONEOUS RULINGS.

   The Court of Appeals will not overturn a ruling of a trial court at a hearing on a motion to suppress evidence unless that ruling is found to be clearly erroneous.

2. SEARCHES AND SEIZURES — APPEAL.

   A police officer's investigatory pursuit of a defendant must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures, and a reviewing court must determine if the record reveals specific, articulable facts which, taken together with rational inferences therefrom, reasonably warranted the protested intrusion.

3. Searches and Seizures — Controlled Substances — Evidence.

Police officers who, at nighttime in an area where several rapes had occurred, encountered a person who, upon seeing the officers, ran toward a building which had been the object of breakings and enterings were justified in investigating further, and heroin discovered in the course of that further investigation was properly admitted at the trial of that person for possession of heroin.

4. Witnesses — Striking of Testimony — Refusal to Answer — Judicial Discretion.

The striking of testimony of persons who refuse to answer questions on cross-examination is a matter best left to the sound discretion of the trial court.

5. Criminal Law — Felony-Firearm — Carrying a Concealed Weapon — Double Jeopardy.

Conviction of possession of heroin, carrying a concealed weapon and felony-firearm, all arising out of a single occurrence, violates the constitutional prohibition against double jeopardy because the Legislature did not clearly authorize separate convictions for both carrying a concealed weapon and felony-firearm; in such a case the carrying a concealed weapon conviction should be vacated.

Dissent in Part by MacKenzie, J.

6. Criminal Law — Constitutional Law — Double Jeopardy — Multiple Punishments.

*The constitutional guarantee against double jeopardy protects against multiple punishment for the same offense, and the test to determine whether there was multiple punishment for the same offense is either whether each crime requires proof of a fact that the other crime does not require or whether the Legislature expressed a clear intent to define and punish separate offenses based on one incident.*

7. Criminal Law — Felony-Firearm — Carrying a Concealed Weapon — Double Jeopardy.

*The fact that the Legislature expressly prohibited the crime of carrying a concealed weapon from being an underlying offense of felony-firearm does not mean that there cannot be convictions of both where another felony serves as the underlying offense of the felony-firearm conviction; conviction of carrying a concealed weapon, felony-firearm and possession of heroin arising from a single occurrence does not violate the constitutional prohibition against double jeopardy.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*William A. Haley, Jr.,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P. J., and D. F. WALSH and MACKENZIE, JJ.

D. F. WALSH, J. Defendant, Chauncey Carter, was convicted by a jury of possession of heroin, MCL 335.341(4)(a); MSA 18.1070(41)(4)(a), possession of a firearm in the commission or attempted commission of a felony, MCL 750.227b; MSA 28.424(2), and carrying a concealed weapon, MCL 750.227; MSA 28.424. On December 16, 1977, he was sentenced to a prison term of two to four years on the heroin conviction and two to five years on the carrying a concealed weapon conviction. These sentences were to run concurrently. The mandatory two year prison sentence, to be served consecutively, was imposed for the felony-firearm conviction. He now appeals; we affirm in part and reverse in part.

At defendant's September 26, 1977, preliminary examination, Officer Ronald Smith of the Detroit Police Department testified that at about 8:40 p.m. on September 15, 1977, he was on routine patrol in the area of Gladstone and Woodrow Wilson in Detroit. Three other police officers were with Officer Smith in his semimarked police car. As the car approached 1620 Gladstone, Officer Smith saw defendant walking away from the apartment building at that address. When defendant reached the sidewalk, he looked in the direction of the police car, turned around and ran toward the

apartment building. Officer Smith followed. When defendant reached the building he opened the door and entered a foyer area. As the door was closing behind defendant, Officer Smith saw him throw down a plastic bag. The officer picked up the bag and saw that it contained a brown substance which he suspected was heroin. Defendant was placed under arrest. Officer James Irons conducted a patdown search of defendant and took a .25-caliber loaded automatic pistol from defendant's waistband.

According to Officer Smith, there had been numerous rapes in the area and he had received reports of breakings and enterings in the building at 1620 Gladstone.

On October 21, 1977, defendant's pretrial motion to suppress the heroin was denied. Citing *People v Terrell,* 77 Mich App 676; 259 NW2d 187 (1977), defendant argues that the trial court erred in denying his motion to suppress evidence.

We will not disturb the trial court's denial of defendant's suppression motion unless we find that it was clearly erroneous. *People v White,* 84 Mich App 351, 354; 269 NW2d 598 (1978), *lv den* 406 Mich 858 (1979). We do not so find.

We agree with the *Terrell* panel that the police officers' investigatory pursuit of defendant must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures. *People v Terrell, supra,* 679. Under *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), we must determine if the record reveals specific, articulable facts which, taken together with rational inferences from those facts, reasonably warranted the protested intrusion. *Id.,* 21. The appropriateness of the action taken must be

judged by an objective standard: would the facts available to Officer Smith have justified the belief in a person of reasonable caution that the action taken was proper? *Id.,* 21-22. This standard allows police officers to pursue their legitimate investigative function while at the same time preventing intrusion upon constitutionally guaranteed rights.

The instant facts are similar to those in *People v Dixon,* 85 Mich App 271; 271 NW2d 196 (1978), *lv den* 406 Mich 906 (1979). Although the *Dixon* panel did not agree on the constitutionality of the scope of the police officers' detention of the defendant, there was unanimous agreement that the police had been justified in stopping the defendant for investigative purposes. They had seen the defendant running in the early morning hours in an area which had been the scene of many recent early morning break-ins.

Similarly, the officers in this case could point to articulable facts which warranted investigatory pursuit of defendant. They encountered defendant at nighttime in an area where several rapes had occurred. Upon seeing them, defendant suddenly turned and ran back toward a building which had been the object of breakings and enterings. Under the circumstances, further investigation was reasonable. In fact, in our judgment, failure to investigate would have been inconsistent with good police practice.[1] The trial court's denial of defendant's motion to suppress is affirmed. To whatever

[1] Several cases from other jurisdictions lend support to our holding. In each of the following cases, the courts found that, under facts similar or analogous to the instant facts, the *Terry* standard had been satisfied: *Luker v State,* 358 So 2d 504 (Ala Crim App, 1978), *People v King,* 62 Ill App 3d 239; 379 NE2d 69 (1978), *State v Taylor,* 363 So 2d 699 (La, 1978), *People v Waits,* 580 P2d 391 (Colo, 1978). Also see the discussion in *United States v Coleman,* 450 F Supp 433, 439-440 (ED Mich, 1978), concerning the significance of a defendant's flight in determining whether the *Terry* standard has been satisfied.

extent *People v Terrell, supra,* may be inconsistent with our ruling in this case, we decline to follow it.

During trial a separate record was made to determine if Willard Jackson, a proposed defense witness, would be allowed to testify. Mr. Jackson had been with defendant at the time of the latter's arrest. In response to questions posed to him by defense counsel, Mr. Jackson stated that he would answer questions regarding where he had met defendant on September 15, 1977, what time they had gone to 1620 Gladstone, and what had occurred at the time of defendant's arrest. He stated, however, that he would not answer certain of the questions which would be posed by the prosecutor.[2]

---

[2] Mr. Jackson did not refuse to answer all of the prosecutor's questions. The following is the entire cross-examination of the witness by the prosecutor:

"CROSS EXAMINATION

"BY MR. SCHRAM:

"Q Yes sir, if I were to ask you what you were doing there, would that be a problem to you?

"A Can I refuse to answer?

"MR. SCHRAM: You can say yes or no to that. It would be a problem to you, that doesn't incriminate you, that means I wouldn't be able to ask you that.

"A The answer to that, no, I wouldn't answer that.

"Q (By Mr. Schram) You wouldn't answer that. If I asked you did you see 50 grams of heroin that afternoon, would that be a problem to you?

"A I wouldn't answer that.

"Q If I asked you if you had touched yourself, 50 grams of heroin, would you answer that?

"A No.

"Q If I asked you if you handed it to Chauncey Carter, would you answer that?

"A No.

"Q If I asked you did Chauncey Carter have 50 grams of heroin on him when he walked back to that apartment building, would you answer that?

"A I'd answer that, probably, yes.

"Q If I asked you if you were with Chauncey Carter in the apartment prior to exiting it and what you were doing in the apartment, would answer that?

"A No, oh no.

"Q If I asked you if you knew whether Mr. Carter was aware of that, though, would you answer that?

"A Yes, I'd answer that.

"Q Would you answer that truthfully?

"A I swore to tell the truth.

"THE COURT: Well you say you would answer that, what would your answer be to that, sir?

"A What—the question is whether it belonged to him?

"Q (By Mr. Schram) No. Not whether it belonged to him. Whether he knew it was there, whether he knew there was dope in that hallway, in that foyer?

"A Is that what you meant?

"Q Maybe I didn't ask that.

"A You didn't ask that, I don't think.

"Q Which one did you think I asked?

"A The last question I thought you asked me would I answer if he had any knowledge of it.

"Q Right.

"A Or if he knew about it.

"Q Right. Not whether he knew how it got there.

"A Whether he had any knowledge of it?

"Q Of the dope that day.

"A Yes.

"Q Would you answer that?

"A Yes, I'd answer that.

"Q But at the same time you would answer the question whether you—whether Mr. Carter was upstairs with you in that apartment and he knew about the dope, you wouldn't answer that but you would answer once you were down on the street?

"A Yes.

"Q So you are saying whatever knowledge he had or may have had when he was in the apartment no longer existed when he was on the street?

"A If he had any knowledge when he was in there. What are we assuming that he had knowledge of?

"Q We are assuming that you are not answering that question. For the sake of argument we are assuming that he did know it was in the apartment.

"A I wouldn't assume that. If I wouldn't answer the question, evidently he couldn't have known about it. I would take it that way. I would look at it on that side. If he didn't know anything downstairs, he wouldn't know anything upstairs.

"Q Is that how it goes, were you first upstairs and perhaps some dope exchanged upstairs or brought out upstairs?

"A That is not the question.

"Q That is the question as to whether he had any knowledge later on the street whether there was dope up there or whether you were involved in dope.

"A I understand that question.

Answering questions posed to him by the trial court, Mr. Jackson stated that he would testify as to "the absence of Mr. Carter's involvement * * * or knowledge" but that he would not answer questions "tending to go to [his] own involvement or knowledge".

The trial court ruled that Mr. Jackson's testimony would not be admitted. The court found that the introduction of the witness's testimony, in light of his anticipated assertion of his Fifth Amendment privilege not to incriminate himself, would thwart the prosecutor's right to cross-examine him.[3]

The general rule regarding the proper course to be taken when a witness refuses to answer certain questions on cross-examination was set forth in *Stephan v United States,* 133 F2d 87, 97 (CA 6, 1943), *cert den* 318 US 781; 63 S Ct 858; 87 L Ed 1148 (1943), *reh den* 319 US 783; 63 S Ct 1172; 87 L Ed 1727 (1943):

"The general rule is that 'where the witness after his examination in chief on the stand has refused to submit to cross-examination, the opportunity of thus probing and testing his statements has substantially failed and his direct testimony should be struck out.' Wigmore on Ev., supra, Sec. 1391, p 112, and cases cited in the footnotes. But to this general rule there are many exceptions. One is that 'on the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result.' Wigmore further states, 'Courts treat this situation with varying

"Q That one you couldn't answer?
"A No."

[3] The trial court further ruled that exclusion of the witness's testimony was mandated by the decision in *People v Giacalone,* 399 Mich 642; 250 NW2d 492 (1977). Finding no error in the trial court's reliance on a separate basis for his ruling—*i.e.,* impermissible curtailment of the prosecutor's right to cross-examine the witness—we do not discuss the applicability of *Giacalone.*

degrees of strictness. It should be left to the determination of the trial judge, regard being had chiefly to the motive of the witness and materiality of the answer.' See Gibson v Goldthwaite, 7 Ala 281, 42 Am Dec 592; Flannery v Commonwealth, Ky, 51 SW 572; Scott v McCann, 76 Md 47; 24 A 536; Succession of Townsend, 40 La Ann 66; 3 So 488."

In two recent cases, the Wisconsin Supreme Court dealt with the precise issue which is presented to us in this case: whether the trial court acted properly in striking the entire testimony of a defense witness. See *State v Monsoor,* 56 Wisc 2d 689; 203 NW2d 20 (1973), *Peters v State,* 70 Wisc 2d 22; 233 NW2d 420 (1975). As noted in *Peters,* an accused's constitutional right to present witnesses in his own behalf comes into play when an issue arises concerning the striking of a defense witness's testimony. That right, however, is:

"* * * qualified by the necessity of compliance with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence'". 70 Wisc 2d 22, 37, citing *Chambers v Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

The striking of testimony of persons who refuse to answer questions on cross-examination is, therefore, a matter best left to the sound discretion of the trial court. We find no abuse of discretion in the exclusion of Mr. Jackson's testimony in this case. The questions posed by the prosecutor (see footnote 2) were not unrelated to the events which gave rise to the drug charge against defendant. The questions were designed specifically to test the truthfulness of Mr. Jackson's testimony about facts and circumstances surrounding the alleged

offenses. We decline to disturb the trial court's ruling in this regard.

Defendant was convicted of three crimes—felony-firearm, possession of heroin and carrying a concealed weapon. The Supreme Court's holding in *Wayne County Prosecutor v Recorder's Court Judge*, 406 Mich 374; 280 NW2d 793 (1979), conclusively establishes the constitutionality and legality of concurrent convictions of possession of heroin and felony-firearm. The Supreme Court's discussion in *Wayne County Prosecutor*, however, leads inevitably to the conclusion that defendant's carrying a concealed weapon conviction cannot stand.

The felony-firearm statute expressly provides that one element of the crime of felony-firearm is the commission or attempted commission of any felony other than carrying a concealed weapon or unlawful possession of a weapon. MCL 750.227b(1); MSA 28.424(2)(1), *Wayne County Prosecutor v Recorder's Court Judge, supra,* 397. In other words, carrying a concealed weapon is not a "proper" *(id.)* felony for purposes of supporting a felony-firearm conviction.

It is argued, however, that because defendant was also convicted of the heroin offense and because that crime can serve as the underlying felony supporting the felony-firearm conviction, the carrying a concealed weapon conviction can stand as a separate and distinct conviction. The statutory language does not clearly eliminate the possible validity of this argument. Nor did the Legislature clearly indicate its intent to authorize concurrent convictions of carrying a concealed weapon and felony-firearm in cases in which a third felony was charged in the information.

In analyzing and reaffirming its decisions in *People v Cook,* 236 Mich 333; 210 NW 296 (1926),

*People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), and *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), the Supreme Court, in *Wayne County Prosecutor, supra,* observed that none of those earlier cases had "involved statutes which evidenced a clear legislative intent to authorize separate convictions and cumulative punishments based on one occurrence". 406 Mich 374, 399. The Court concluded:

"These cases *[Cook/Martin/Stewart]* stand for the proposition that where the Legislature has not clearly authorized multiple convictions and cumulative punishments, both of two convictions and their attendant punishments cannot stand." 406 Mich 374, 402.

Applying this standard to the instant situation, we are satisfied that defendant's carrying a concealed weapon conviction must be set aside. The carrying a concealed weapons and felony-firearm convictions are based on "one occurrence", *i.e.,* one possession of a firearm. Because the Legislature has not clearly authorized separate convictions for both carrying a concealed weapon and felony-firearm based on one possession of a firearm, one of the convictions and its attendant punishment cannot stand. We, therefore, set aside defendant's carrying a concealed weapon conviction and vacate the punishment he received for that conviction.[4]

We have examined the jury instructions and find that defendant's assignment of error with respect thereto is without merit.

Affirmed in part; reversed in part.

[4] We are aware that the opposite result was reached by the majority in *People v Shelton,* 93 Mich App 782; 286 NW2d 922 (1979). In our judgment, however, the conclusion reached by Judge KAUFMAN in his dissent in that case is more consistent with the rationale underlying the Supreme Court's decisions in *Cook, Martin* and *Stewart* cited in the text.

D. E. HOLBROOK, JR., P.J., concurred.

MACKENZIE, J. *(dissenting in part).* I cannot join the part of the majority's opinion which holds that there cannot be convictions for both carrying a concealed weapon and felony-firearm based upon one occurrence. Unlike the majority, I agree with the majority opinion in *People v Shelton,* 93 Mich App 782; 286 NW2d 922 (1979), which upheld convictions for both offenses based upon one occurrence.

As noted in *Shelton,* the right against double jeopardy is not violated if (1) each offense requires proof of a fact that the other does not, or (2) the Legislature expressed a clear intent to define and punish separate offenses based on one occurrence. The crimes of carrying a concealed weapon and felony-firearm each require proof of a fact that the other does not. The former requires that a dangerous weapon be concealed while the latter requires that a firearm be possessed during the commission or attempted commission of a felony.

I do not believe the fact that the Legislature has expressly prohibited the crime of carrying a concealed weapon from being an underlying offense of felony-firearm means that there cannot be convictions of both where another felony serves as the underlying offense of the felony-firearm conviction. The crimes of carrying a concealed weapon and felony-firearm serve two different purposes. According to this Court in *People v Jonnie W Jones,* 12 Mich App 293, 295-296; 162 NW2d 847 (1968):

" 'The purpose of *all* concealment statutes is clear. At the time they were enacted, the open carrying of weapons upon the person was not prohibited. The purpose of the concealed weapons statutes was to prevent men in sudden quarrel or in the commission of crime from

drawing concealed weapons and using them without prior notice to their victims that they were armed. The person assailed or attacked would behave one way if he knew his assailant was armed and perhaps another way if he could safely presume that he was unarmed.' *People v Raso* (1958), 9 Misc 2d 739 (170 NYS2d 245, 251)."

On the other hand, the purpose of the felony-firearm statute is to deter the use of handguns during the course of a felony. *People v Elowe,* 85 Mich App 744; 272 NW2d 596 (1978). Consequently, I would affirm defendant's conviction of carrying a concealed weapon.