PEOPLE v STURGIS

PEOPLE v KESTER

Docket Nos. 72979, 72865. Argued June 4, 1986 (Calendar Nos. 8-9). Decided December 30, 1986.

Mark A. Sturgis was convicted by a jury in the Kent Circuit Court, George R. Cook, J., of felonious assault, possession of a firearm during the commission of a felony, and carrying a concealed weapon. The Court of Appeals, R. B. Burns, P.J., and MacKenzie and Banks, JJ., affirmed in an opinion per curiam (Docket No. 64319). The defendant appeals.

Charles W. Kester was convicted by a jury in the Oakland Circuit Court, Alice L. Gilbert, J., of felonious assault, possession of a firearm during the commission of a felony, and carrying a concealed weapon. The Court of Appeals, Beasley, P.J., and Allen and Deneweth, JJ., reversed the defendant's conviction of felony-firearm in an unpublished opinion per curiam on the ground that the defendant's convictions of both carrying a concealed weapon and felony-firearm arose out of one criminal transaction (Docket No. 68486). The people appeal.

In an opinion by Justice Boyle, joined by Chief Justice Williams and Justices Brickley, Riley, and Archer, the Supreme Court *held:*

A conviction of carrying a concealed weapon and a conviction of possession of a firearm during the commission of a felony may be obtained in the same trial growing out of a single criminal episode when the felony-firearm conviction is based on a distinct felony and the concealed weapon offense is not the predicate of the felony-firearm offense.

1. Among the protections afforded by the Fifth Amendment

References

Am Jur 2d, Criminal Law §§ 244 *et seq.,* 277.

Am Jur 2d, Weapons and Firearms § 15.

Validity and construction of gun control laws. 28 ALR3d 845.

Offense of carrying concealed weapon as affected by manner of carrying or place of concealment. 43 ALR2d 492.

See also the annotations in the Index to Annotations under Double Jeopardy, Same or Similar Acts or Matters, Weapons and Firearms.

guarantee against being placed twice in jeopardy are a protection against successive prosecutions for the same offense and a separate protection against multiple punishment for the same offense. The scope of each protection is determined by the definition of "same offense." It is clear that the term applies to overlapping conduct that violates more than one statute. It is also clear that it has a broader meaning where subsequent prosecution rather than multiple punishment is involved, the latter being a restriction on a court's ability to impose punishment in excess of legislative intent, not a limit on the Legislature's power to define crime and fix punishment. Even if crimes are the same, if it is evident that the Legislature intended to authorize cumulative punishments, a court's inquiry is at an end.

2. In Michigan, the term "same offense," for purposes of protection against multiple prosecutions, is defined by the "same transaction" test which requires the prosecution to join in one trial all charges against a defendant which grew out of a continuous time sequence and display a single intent and goal. While the same transaction test is an appropriate procedural protection against successive prosecutions, if applied to simultaneous prosecutions, it could frustrate the Legislature's legitimate power to determine that a single act or transaction violates distinctly protected social values, each of which should be separately punished. Because the Legislature may specifically authorize penalties for conduct that otherwise would amount to the "same offense," cumulative punishment of such conduct under two different statutes in a single trial does not violate federal or state double jeopardy protections. In this case, the Legislature clearly intended to authorize punishment over and above, and in addition to, that otherwise provided for the commission of a felony where the defendant carried a weapon in the course of the felony. Thus convictions of carrying a concealed weapon and possession of a firearm during the commission of a felony may be obtained in the same trial growing out of the single criminal episode.

3. In this case, there is no issue whether a single act is punishable under separate statutes, whether several acts in a criminal episode involve multiple convictions under one statute, whether different acts have been linked by the Legislature into predicate and compound crimes, or whether proof of a facial violation of one statute will always constitute proof of a violation of a distinct statute. Nor does the case present a situation in which a prosecutor has artificially bifurcated a single crime into a series of temporal or spacial units: The only

issue is whether the Legislature has authorized convictions of carrying a concealed weapon and felony-firearm growing out of the same criminal episode.

4. The Legislature intended that multiple convictions and cumulative punishment be imposed where a person possessing a firearm commits a felony by an act separate and apart from the act giving rise to an excepted felony under the statute. The language of the felony-firearm statute specifically requires a sentence in addition to that imposed for an underlying felony and is markedly different from language used in sentence enhancement statutes. The legislative history of the statute also reflects a commitment to reach all but the excepted felonies. In addition, the statutes in this case clearly have distinct social purposes sought to be achieved by imposition of criminal penalties. Carrying a concealed weapon is a strict-liability offense intended to discourage the carrying of concealed weapons, regardless of the intent of the person carrying the weapon. The felony-firearm statute on the other hand is intended to discourage the use of a weapon during the course of a felony. The history, language, and structure of the statutes indicate that felony-firearm and concealed weapon offenses are distinct offenses which may be punished separately in a single trial when the concealed weapon offense is not the predicate of the felony-firearm offense.

Justice CAVANAGH, concurring, wrote separately to note that where one offense is a necessarily or cognate lesser included offense of another, it is the same offense for double jeopardy purposes under the state constitution. Imposing punishment for both offenses amounts to constitutionally impermissible multiple punishment for the same offense.

*Sturgis,* affirmed.

*Kester,* affirmed in part and reversed in part.

Justice LEVIN, dissenting, stated that in every case in which possession of a firearm during the commission of a felony is committed a defendant will have committed, while carrying or possessing a dangerous weapon, a predicate felony other than the felony of carrying a concealed weapon. Rarely will a person found guilty of felony-firearm not also have carried the firearm concealed on or about the person and thus also have committed the felony of carrying a concealed weapon. Holding that the Legislature intended that a person could be convicted of felony-firearm and carrying a concealed weapon on the basis of the same transaction deprives the statutory exception respecting the offense of carrying a concealed weapon of operational meaning except in the atypical case in which the firearm was

not concealed, is contrary to the spirit of the statute, and serves no purpose other than to provide still another area for plea bargaining and to increase the maximum sentence that can be imposed in respect to an underlying offense where the maximum sentence for the predicate felony is less than five years.

130 Mich App 54; 34 NW2d 230 (1983) affirmed.

1. CRIMINAL LAW — FELONY-FIREARM — CARRYING CONCEALED WEAPONS — MULTIPLE CONVICTIONS.

A conviction of carrying a concealed weapon and a conviction of possession of a firearm during the commission of a felony may be obtained in the same trial growing out of a single criminal episode when the felony-firearm conviction is based on a distinct felony and the concealed weapon offense is not the predicate of the felony-firearm offense (MCL 750.227, 750.227b; MSA 28.424, 28.424[2]).

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MULTIPLE CONVICTIONS.

The double jeopardy protection against multiple punishment for the same offense is a restriction on a court's ability to impose punishment in excess of that intended by the Legislature, not a limit on the Legislature's power to define crime and fix punishment (US Const, Am V; Const 1963, art 1, § 15).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people in *Sturgis.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Robert F. Davisson,* Assistant Prosecuting Attorney, for the people in *Kester.*

*George S. Buth* for defendant Sturgis.

*Arthur James Rubiner* for defendant Kester.

BOYLE, J. In each of these consolidated cases, we

granted leave to consider whether each defendant, convicted of felonious assault, could, consistent with the principles articulated in *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984), also be convicted of both carrying a concealed weapon and possession of a firearm during the commission of a felony. We find that the Legislature intended to authorize such multiple convictions. The Court of Appeals decision as to defendant Sturgis is thereby affirmed. The Court of Appeals decision vacating defendant Kester's felony-firearm conviction is reversed, and the conviction is reinstated.

I

FACTS

Defendants Mark A. Sturgis and Charles Wesley Kester were convicted by juries in unrelated trials of felonious assault, MCL 750.82; MSA 28.277, possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and carrying a concealed weapon, MCL 750.227; MSA 28.424. The evidence presented at Sturgis' trial was summarized by the Court of Appeals as follows:

The prosecution's main witness was a security guard at a lounge. He testified that he learned that the defendant had a gun, he called the police, and then approached the defendant, who was in front of the lounge. The guard stated that he told the defendant to keep his hands where they could be seen, and that defendant then lifted his jacket and pulled out a gun. The guard then ducked behind a nearby car, the defendant ran across the street, and the guard gave chase. The guard testified that defendant turned around and fired one shot at him. Defendant, in his testimony, admitted that he was carrying a concealed gun without a

license when he went to the lounge. However,
defendant stated that when the security guard
approached him he told him he wasn't going to do
anything and began to pull out the gun from
under his jacket only with the intention of giving
the gun to the guard. Defendant also testified that
he ran off when the guard ducked behind the car,
admitted that he fired his gun into the air, but
denied having fired at the security guard. [130
Mich App 54, 59; 343 NW2d 230 (1983).]

The Court of Appeals affirmed defendant Stur-
gis' conviction. We granted leave to appeal. 422
Mich 857 (1985).

The evidence presented at Kester's trial indi-
cated that on March 10, 1981, Kester assaulted
Richard Matonican, the bartender and cook at the
Steinhaus II Bar, with a gun. Matonican's corrobo-
rated testimony indicated that he had told defen-
dant and the group defendant accompanied that
they would have to leave because they were being
too loud and were breaking glasses. A tussle then
ensued between Matonican and one of the men.

When Matonican turned around, he saw the
defendant pointing a gun at the floor. Defendant
then raised the gun in the air and waved it around
stating, "Back off," and "This is real."

He fired the gun at the floor, pointed the gun at
Matonican's head, and asked him if he wanted to
die. The defendant then left the bar by himself.
Police Officer Robert Kluwe testified that when he
arrived at the bar, defendant was heading toward
the back door. At that point, the officer did not see
defendant's hands. He chased the defendant into
the parking lot where he noticed that defendant
was not holding a gun. After he told defendant to
stop, defendant moved his hand to his front waist
area, and swung it sideways, throwing the gun to
his right. Defendant was then apprehended and

arrested. Subsequently, the gun was retrieved. The hammer was cocked and, of the six rounds in the gun, one was spent.

Defendant testified that he took the gun from Pattie Blackwell and fired a shot into the floor after the bartender had pushed Dennis Hyde's hand down, breaking a glass when Dennis tried to finish his drink. Most of this testimony was corroborated by Dennis Hyde and his wife, Cynthia.

Defendant denied pointing the gun at the bartender or asking him if he wanted to die. Defendant also denied concealing the gun, testifying that as he left the bar he held the gun in front of himself. Six or seven steps outside the door, he tossed the gun away because he was on parole and did not want to get caught with it.

In an unpublished per curiam opinion, the Court of Appeals affirmed defendant's convictions for felonious assault and carrying a concealed weapon, but reversed and vacated the felony-firearm conviction. We granted leave to appeal. 422 Mich 856 (1985).

II

Among the protections afforded by the Fifth Amendment guarantee against double jeopardy are a protection against successive prosecutions for the "same offense," and a separate protection against multiple punishment for the "same offense." *Ex parte Lange,* 85 US (18 Wall) 163; 21 L Ed 872 (1873). The first protection is a limitation on the prosecution, and prevents multiple prosecutions for the same offense, regardless of whether the first trial ends in conviction or acquittal. The primary purpose of this aspect of double jeopardy protection is to preserve the finality of judgments in criminal prosecutions and to protect the defen-

dant from prosecutorial overreaching, *Garrett v United States,* 471 US 773; 105 S Ct 2407; 85 L Ed 2d 764 (1985) (O'Connor, J., concurring). *Missouri v Hunter,* 459 US 359, 369; 103 S Ct 673; 74 L Ed 2d 535 (1983) (Marshall J., dissenting).

The second protection, that is, the protection against multiple punishment for the same offense, is designed to ensure that courts confine their sentences within the limits established by the Legislature. The scope of each protection is determined by the definition of "same offense," a phrase which is "deceptively simple in appearance but virtually kaleidoscopic in application." See *Whalen v United States,* 445 US 684, 700; 100 S Ct 1432; 63 L Ed 2d 715 (1980) (Rehnquist, J., dissenting).

It is clear, however, that the term "same offense" applies to overlapping conduct that violates more than one statute, *Brown v Ohio,* 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977). It is also clear that "the term 'same offense' has a different and broader meaning in a case involving a subsequent prosecution than it does . . . where multiple punishments [are] imposed during a single trial." *People v Wakeford,* 418 Mich 95, 104; 341 NW2d 68 (1983).[1]

The constitutional protection against multiple prosecutions is a guarantee "that the State with all its resources and power [shall] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compel-

[1] Compare *People v White,* 390 Mich 245; 212 NW2d 222 (1973), and *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (Brennan, J., with Douglas and Marshall, JJ., concurring), with *People v Carter,* 415 Mich 558; 330 NW2d 314 (1982), *Wayne Co Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), and *Whalen v United States, supra; Brown v Ohio, supra,* 166-167, n 6 (dictum). But see *Missouri v Hunter, supra,* 369, where Justice Marshall stated his belief that the phrase "same offense" should be interpreted the same for both protections.

ling him to live in a continuing state of anxiety and insecurity . . . ." *Green v United States,* 355 US 184, 187; 78 S Ct 221; 2 L Ed 2d 199 (1957). Successive prosecution cases involve the core values of the Double Jeopardy Clause.

By contrast, the constitutional protection against multiple punishment is a restriction on a court's ability to impose punishment in excess of legislative intent. The Court can enforce the constitutional prohibition against multiple prosecutions through judicial interpretation of the term "same offense" as intended by the framers of the constitution. Judicial examination of the scope of double jeopardy protection against imposed multiple punishment for the "same offense" is confined to a determination of legislative intent. In the latter case, the core double jeopardy right to be free from vexatious proceedings is simply not present, *People v Robideau, supra,* 485. Since the power to define crime and fix punishment is wholly legislative, the clause is not a limitation on the Legislature, *Whalen v United States, supra,* 700, and the only interest of the defendant is in not having more punishment imposed than intended by the Legislature, *People v Robideau, supra,* 485. Thus, "[e]ven if the crimes are the same, . . . if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end," *Ohio v Johnson,* 467 US 493, 499, n 8; 104 S Ct 2536; 81 L Ed 2d 425 (1984).

Both the United States Supreme Court and this Court have stated that in the context of multiple punishment *at a single trial,* the issue whether two convictions involve the same offense for purposes of the protection against multiple punishment is solely one of legislative intent. *Missouri v*

*Hunter, supra,* 366; *People v Robideau, supra,* 484.[2]
"[T]he Double Jeopardy Clause does no more than
prevent the sentencing court from prescribing
greater punishment than the legislature intend-
ed." *Missouri v Hunter, supra.* Further, the Legis-
lature's intent is to be ascertained through tradi-
tional means, "the subject, language, and history
of the statutes," *Robideau, supra,* 486.

In Michigan, the term "same offense" for pur-
poses of the protection against multiple prosecu-
tions is defined by the "same transaction test"
which requires the prosecution, except in limited
circumstances, to join at one trial all the charges
against a defendant which grew out of a continu-
ous time sequence and display a single intent and
goal.[3] *People v White,* 390 Mich 245, 258; 212
NW2d 222 (1973); *Ashe v Swenson,* 397 US 436,
453-454; 90 S Ct 1189; 25 L Ed 2d 469 (1970)

---

[2] Decisions of the United States Supreme Court illustrate that the
issue whether conduct is to be deemed a single offense for which only
a single penalty can be imposed, or a series of acts which can be
punished separately, is to be determined by the intent of the legisla-
ture. Compare *Ebeling v Morgan,* 237 US 625; 35 S Ct 710; 59 L Ed
1151 (1915), and *Morgan v Devine,* 237 US 632; 35 S Ct 712; 59 L Ed
1153 (1915), with *Ladner v United States (On Rehearing),* 358 US 169;
79 S Ct 209; 3 L Ed 2d 199 (1958), and *United States v Universal CIT
Credit Corp,* 344 US 218; 73 S Ct 227; 97 L Ed 260 (1952).

In *Brown v Ohio, supra,* the Court concluded that joyriding and
auto theft, as defined by the state court, constituted the same statu-
tory offense under the Double Jeopardy Clause. The Court carefully
noted, however at p 169, n 8, "We would have a different case if the
Ohio Legislature had provided that joyriding is a separate offense for
each day in which a motor vehicle is operated without the owner's
consent." Thus, whether conduct violating several statutes is to be
considered one unit of conviction or several discrete and separately
punishable acts depends entirely on what the Legislature intended
the unit of conviction to be as measured by the language and
structure of the statutes, *Brown, supra,* and the history and purposes
of the offenses, *Gore v United States,* 357 US 386; 78 S Ct 1280; 2 L
Ed 2d 1405 (1958); *Garrett v United States, supra.*

[3] The requirement of joinder of all offenses in the same transaction
appears to apply only to acts occurring in a continuous time sequence
characterized by a single intent. The presence of one without the
other would not require joinder. *Crampton v 54-A Dist Judge,* 397
Mich 489, 502, n 9; 245 NW2d 28 (1976).

(Brennan, J., concurring); *People v Kretchmer,* 404 Mich 59; 272 NW2d 558 (1978). In *White,* the majority did not distinguish whether the Michigan or the United States Constitution was the authority for the decision, but adopted the same transaction test in order to "promote the best interests of justice and sound judicial administration" by requiring that a defendant be brought to trial as expeditiously and economically as possible.

The United States Supreme Court has "steadfastly refused" to adopt the single transaction view of the Double Jeopardy Clause, *Garrett v United States, supra.* Thus, under federal double jeopardy precedent, a second prosecution would violate the first prong of jeopardy protection only where it is for the "same offense." Compare *Brown v Ohio, supra,*[4] with *Garrett v United States, supra.* Under *People v White, supra,* a second prosecution is barred if it should have been joined in the first prosecution because it met the "same transaction" test.

While the same transaction test is an appropriate procedural protection against successive prosecutions, if applied to simultaneous prosecutions, it may frustrate a legislature's legitimate right to determine that a single act or transaction violates distinctly protected social values, each of which should be separately punished. For example, although it is clear that successive prosecution of an underlying felony and a sexual offense would be precluded under *People v White,* in *Robideau* this Court determined that the distinct social harms of nonconsensual sexual penetration and the underlying felony indicated a legislative intent to authorize multiple punishment in a single prosecution.

[4] Although multiple punishment doctrine is not a substantive limitation on the Legislature, the Eighth Amendment is a direct limitation on the power of the Legislature. See, e.g., *Solem v Helm,* 463 US 277; 103 S Ct 3001; 77 L Ed 2d 637 (1983).

In fact, since a legislature may specifically authorize penalties for what would otherwise be the "same offense," cumulative punishment of the same conduct under two different statutes in a *single* trial does not run afoul of the Double Jeopardy Clause in either the federal or state system. Thus, the Court wrote in *Missouri v Hunter, supra,* 368-369:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger* [*v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932)], a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

In *Wayne Co Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), a majority of this Court recognized that the double jeopardy protection against multiple punishment served only to insure that a defendant was not subjected to more punishment than that authorized by the legislative branch. The Court applied the rule articulated in *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), to the "legal elements of the respective offenses [felony and felony-firearm], not on the particular factual occurrence which gives rise to the charges," 406 Mich 395. We held that since each statute required proof of a fact that the other does not as a matter of law, double jeopardy was not violated by the multiple convictions. When the issue is multiple punishments at a single trial, "[t]he point of departure for our analysis of the defendant's double jeopardy claim . . . is the prin-

ciple that the intent of the Legislature controls,"
*People v Wakeford, supra,* 108.

In sum, where the issue is the propriety of
multiple punishments in a single trial, our obliga-
tion is to determine what punishment the Legisla-
ture has authorized.

The objective is easily articulated, but more
difficult to achieve. Both this Court and the United
States Supreme Court have at various times em-
ployed different and seemingly inconsistent analy-
ses to the issue. At times, a "required evidence"
test has been employed. This test asks whether, in
the abstract, each statute requires proof of a fact
which the other does not, *Blockburger, supra;
Wayne Co Prosecutor, supra.* In other cases, an
actual evidence approach has been used. This test
focuses on whether the same proofs were used at
trial to make out the elements of each offense.
*People v Martin,* 398 Mich 303; 247 NW2d 503
(1976); *People v Stewart (On Rehearing),* 400 Mich
540; 256 NW2d 31 (1977). A rule of lenity has also
been employed by the United States Supreme
Court where there has been some demonstration of
legislative intent not to authorize multiple punish-
ment for conduct which violates either separate
statutory provisions, *Prince v United States,* 352
US 322; 77 S Ct 403; 1 L Ed 2d 70 (1957), or
conduct which could constitute multiple violations
of a single statute, *Bell v United States,* 349 US
81; 75 S Ct 620; 99 L Ed 905 (1955). See also
Thomas, *A unified theory of multiple punishment,*
47 U Pitt L R 1, 37 (1985), observing that the rule
of lenity has "always" been based on some demon-
stration of legislative intent, explicit, implied, or
historical, not to authorize multiple penalties.

This Court has now clearly rejected the actual
evidence factual double jeopardy test, and the
"wooden application" of *Blockburger,* in favor of

the more flexible, and traditional means of deter-
mining the intent of the Legislature, *Robideau,
supra.*[5]

We find that in the case sub judice the Legisla-
ture clearly intended to authorize punishment
over and above, and in addition to, that otherwise
provided, where a defendant carried a weapon in
the course of a felony. We conclude that a con-

---

[5] This Court explained in *Robideau, supra,* 484-485:

> As a means of determining [legislative intent] we find the
> *Blockburger* test to have questionable status in the Supreme
> Court of the United States and find the propriety of its use in
> any case to be questionable. When applied in the abstract to
> the statutory elements of an offense, it merely serves to iden-
> tify true lesser included offenses. While it may be true that the
> Legislature ordinarily does not intend multiple punishments
> when one crime is completely subsumed in another, *Blockbur-
> ger* is of no aid in making the ultimate determination. Al-
> though its creation of a presumption may make a court's task
> easier, it may also induce a court to avoid difficult questions of
> legislative intent in favor of the wooden application of a sim-
> plistic test.

In rejecting *Blockburger,* this Court seems to have anticipated a
similar reaction by the United States Supreme Court where the plain
intent of the Legislature is ascertainable from the face of the statute
and legislative history:

> The rule stated in *Blockburger* was applied as a rule of
> statutory construction to help determine legislative intent.
> Significantly, after setting out the rule, the Court cited a
> paragraph in *Albrecht* [*v United States,* 273 US 1, 11; 47 S Ct
> 250; 71 L Ed 505 (1927)], which included the following state-
> ment: "There is nothing in the Constitution which prevents
> Congress from punishing separately each step leading to the
> consummation of a transaction which it has power to prohibit
> and *punishing also the completed transaction*" (emphasis
> added). We have recently indicated that the *Blockburger* rule is
> not controlling when the legislative intent is clear from the
> face of the statute or the legislative history. *Missouri v Hunter,*
> 459 US 359, 368 (1983); *Albernaz v United States,* 450 US 333,
> 340 [101 S Ct 1137; 67 L Ed 2d 275] (1981); *Whalen v United
> States,* 445 US 684, 691-692 (1980). Indeed, it would be difficult
> to contend otherwise without converting what is essentially a
> factual inquiry as to legislative intent into a conclusive pre-
> sumption of law. [*Garrett v United States, supra,* 471 US —; 85
> L Ed 2d 771-772.]

cealed weapon conviction and a felony-firearm conviction may be obtained in the same trial growing out of a single criminal episode when the felony-firearm conviction is based on a distinct felony.

The only issue before us is whether the Legislature has authorized both a concealed weapon conviction and a felony-firearm conviction growing out of the same criminal episode.

The felony-firearm statute provides:

(1) A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, except the violation of section 227 [carrying concealed weapons] or section 227a [unlawful possession of pistols by licensee], is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the person shall be imprisoned for 5 years. Upon a third or subsequent conviction under this section, the person shall be imprisoned for 10 years.

(2) The term of imprisonment prescribed by this section shall be in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.

(3) The term of imprisonment imposed under this section shall not be suspended. The person subject to the sentence mandated by this section shall not be eligible for parole or probation during the mandatory term imposed pursuant to subsection (1). [MCL 750.227b; MSA 28.424(2).]

In *People v Morton,* 423 Mich 650, 656; 377 NW2d 798 (1985), we affirmed four convictions of a defendant growing out of felonious assault felony-firearm offenses committed on two individuals during one transaction. We there recognized that "it

[is] clear that the Legislature intended, with only a few narrow exceptions, that every felony committed by a person possessing a firearm result in a felony-firearm conviction." Indeed, the language of the statute leaves no doubt that the intent of the Legislature was to impose multiple convictions and cumulative punishment where a person possessing a firearm commits a felony by an act which is separate and apart from the act which gives rise to an excepted felony under the statute, *Wayne Co Prosecutor v Recorder's Court Judge, supra.* The language of statutes sometimes indicates a legislative intent to create a series of offenses prohibiting different phases of conduct, with a separate penalty for each. On the other hand, the legislative intent may sometimes appear from language creating a hierarchy of offenses, depending on the presence or observance of certain aggravating factors. The former structure is indicative of legislative intent to create separate offenses, separately punishable. The latter structure may indicate an intention to permit only a single appropriate offense and conviction.

In *Wayne Co Prosecutor v Recorder's Court Judge, supra,* 389, we noted that the language of the felony-firearm offense specifically requires a sentence "in addition" to the underlying felony and "is markedly different from the language used by the Legislature in those statutes which are merely sentence enhancement statutes," such as the habitual criminal statute. The language and structure of the statute thus contain no indication that the Legislature intended that a felony-firearm offense was a sentence-enhancement statute which precluded the charging and conviction of separate offenses.

The legislative history of the statute also reflects a commitment to reach all but the excepted felo-

nies. There is, in this history, no suggestion that a concealed-weapon felony was to be subsumed in a felony-firearm offense where both had occurred during one course of conduct.

During the pendency of House Bill 5073, the bill which embodied the felony-firearm statute, an unsuccessful attempt was made to substitute a list of enumerated felonies to which the statute would apply. See 1975 Journal of the House 1267-1268; 1975 Journal of the House 5264. Unsuccessful attempts were also made by the Senate to limit the statute by applying the statute only to possession of a firearm during those felonies involving the "actual or threatened destruction or taking of property, or the injury or threatened injury to a person," and by excluding negligent manslaughter and negligent homicide. 1976 Journal of the Senate 50-51. The history of the statute thus evidences no indication of lenity on the part of the Legislature in respect to weapon offenses.

Finally, the statutes clearly have distinct social purposes. The prohibition against carrying a concealed weapon was not part of the common law, but was enacted as a strict-liability offense, Torcia, Wharton's Criminal Law (14th ed), § 23, pp 106-107, whose purpose is to discourage persons from carrying a concealed weapon. See 130 Mich App 65; *People v Shelton,* 93 Mich App 782, 785; 286 NW2d 922 (1979). See also *People v Wright,* 97 Mich App 411; 296 NW2d 46 (1980). The thrust of the concealed weapon statute is the prevention of "carrying" a weapon which is "concealed" regardless of the intent with which the weapon is carried. *People v Williamson,* 200 Mich 342; 166 NW 917 (1918). The felony-firearm statute on the other hand is aimed at discouraging the use of a weapon during the course of a felony.

> The Legislature has clearly expressed its judgment that carrying a firearm during any felony which may, but need not necessarily, involve the carrying of a firearm, entails a distinct social harm inimical to the public health, safety and welfare . . . . [*Wayne Co Prosecutor v Recorder's Court Judge, supra,* 391.]

These statutes are directed at distinct evils and support the conclusion that the Legislature intended to permit multiple punishments for felony-firearm and concealment of a weapon even where there is only one possession of a weapon.

We have rejected the contention that we are constitutionally bound to apply the *Blockburger* test. We note, however, that asking the *Blockburger* question, "whether each *provision* requires proof of a fact which the other does not," *Whalen v United States, supra,* 711 (Rehnquist, J., dissenting) (emphasis added in text), may be helpful in determining whether there are two offenses or only one, because this inquiry is really a "rough proxy" for analysis of the essential issue. "[B]y asking whether two separate statutes each include an element the other does not, a court is really asking whether the legislature manifested an intention to serve two different interests in enacting the two statutes." *Id.,* 714.

The conduct made punishable under the felony-firearm statute, is not the mere possession of a firearm. Rather, it is possession of the firearm *during the commission of or attempt to commit a felony* that triggers a felony-firearm conviction. The conduct made punishable by the concealed weapon statute is likewise not the possession of a firearm, it is the carrying of a weapon, concealed. Each statute is directed at a distinct object which the Legislature seeks to achieve through the imposition of criminal penalties. Where the act giving

rise to the predicate felony is distinct from the act giving rise to the concealed weapon felony, both convictions are authorized by the Legislature.

To hold that a defendant could not be convicted of felony-firearm under these circumstances would be in clear contradiction of legislative intent. It would amount to saying that a defendant could avoid the clear intent of the Legislature that a person be subjected to a separate and distinct minimum penalty, if that person simply took the precaution of concealing the weapon sometime during the criminal transaction. We conclude that the history, language, and structure of the statutes indicate that felony-firearm and concealed weapon offenses are distinct offenses which may be separately punished in a single trial when the concealed weapon offense is not the predicate of the felony-firearm offense.[6]

[6] The Court of Appeals in *Kester* did not analyze the facts of that case, but simply stated its belief that defendant's convictions of both carrying a concealed weapon and felony-firearm arising out of one criminal transaction were constitutionally infirm on the basis of the prior Court of Appeals decision in *People v Carter,* 96 Mich App 694, 704-705; 293 NW2d 681 (1980), lv den 410 Mich 872 (1980), and Judge KAUFMAN's dissent in *People v Shelton, supra,* 785-786. The Court of Appeals apparently concluded that *Carter* required this result because the convictions arose out of one course of conduct, possession of a firearm.

In *Carter,* the defendant was convicted of carrying a concealed weapon, possession of heroin and felony-firearm arising from one criminal incident. The Court of Appeals vacated the defendant's carrying a concealed weapon conviction "[b]ecause the Legislature has not clearly authorized separate convictions for both carrying a concealed weapon and felony-firearm based on one possession of a firearm . . . ." *Id.,* 705. The Court of Appeals reasoning in *Carter* appears to have been influenced by the concept of factual double jeopardy, see, e.g., *People v Martin, supra; People v Stewart, supra,* holding that where the facts of a transaction did "double duty" in supplying proof of elements of distinct offenses, multiple punishment was precluded under the Michigan Constitution's Double Jeopardy Clause. "Factual Double Jeopardy" was rejected in the context of a single statute, multiple punishment case in *People v Wakeford, supra,* 108-112, where the Court concluded that a single course of conduct involving separate armed robberies of two cashiers in a grocery store permitted multiple punishment because the "unit of prosecution,"

This case does not involve the issue as to whether an identifiable single act is punishable under separate statutes as where a single sale of narcotics gives rise to convictions under several statutes. See *Gore v United States,* 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958). It does not involve a situation in which several acts in a criminal episode involve multiple convictions under one statute, *People v Wakeford; Bell v United States, supra.* Nor does this case involve a situation in which acts have been linked by the Legislature into predicate and compound crimes, see *People v Robideau, supra; Missouri v Hunter, supra,* or a true lesser included offense situation where proof of a facial violation of one statute will always constitute proof of a violation of a distinct statute. Compare *Blockburger v United States, supra,* with *Brown v Ohio, supra.*

Finally, we are not presented here with a situation in which it appears that the prosecution has artificially bifurcated a single crime "into a series of temporal or spatial units," *Brown v Ohio, supra,* 169, as we might be were the prosecution to have brought two concealed weapons charges, one based

that is, the conduct of the defendant which the Legislature intended to punish, was the person who was robbed. Further, in *Robideau, supra,* this Court expressly repudiated factual double jeopardy as a substantive limitation on the Legislature.

The result in *Carter* may also have been affected by the Court's adoption of the "same transaction" test for multiple prosecution in *People v White, supra.* But the definition of "same offense" for purposes of multiple prosecution is distinct from the definition of "same offense" for purposes of multiple punishment. As we noted in *Wakeford, supra,* 104, n 7: "We have never held, as a matter of state or federal constitutional law, that only one conviction may result, for example, from the rape, robbery, kidnapping, and murder of victim A, or from the murders of victims B, C and D, even if the charges must be brought in a single trial under the 'same transaction' test. . . . It would offend rationality, as well as our sense of equal justice, to require treatment of one defendant committing a single crime identically with another defendant committing four counts of the same crime [or four separate crimes within] the 'same transaction.'" The result in *Carter* is erroneous.

upon arrival and the other on departure from the scene of the crime.[7]

We agree with the *Sturgis* panel that defendants' convictions of felony-firearm, carrying a concealed weapon, and felonious assault must be affirmed.

In *People v Sturgis,* the judgment of the Court of Appeals is affirmed. We reverse the Court of Appeals decision in *People v Kester* as to the vacation of Kester's felony-firearm conviction and reinstate the conviction. In all other respects, the

---

[7] It has been noted that facial application of the *Blockburger* test is inadequate to protect against multiple prosecutions and punishments in light of the vast number and variety of state and federal criminal statutes. Thomas, *supra,* 36; Comment, *Statutory implementation of Double Jeopardy Clauses: New life for a moribund constitutional guarantee,* 65 Yale L J 339, 349 (1956) (under the *Blockburger* test "there is little to prevent prosecutors from planning cases, framing indictments and selecting evidence in such a manner as to secure innumerable prosecutions of the same defendant for the same criminal activity").

The preliminary Model Penal Code proposed that these concerns be met by adoption of the following rules:

GENERAL PROVISIONS

Section 1.07.   Method of Prosecution When Conduct
                Constitutes More than One Offense.

(1) *Prosecution for Multiple Offenses; Limitation on Convictions.* When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(a) one offense is included in the other, as defined in Subsection (4) of this Section; or

(b) one offense consists only of a conspiracy or other form of preparation to commit the other; or

(c) inconsistent findings of fact are required to establish the commission of the offenses; or

(d) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(e) the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

decision of the Court of Appeals in *Kester* is affirmed.

WILLIAMS, C.J., and BRICKLEY, RILEY, and ARCHER, JJ., concurred with BOYLE, J.

CAVANAGH, J. (*concurring*). I concur in the result reached by the majority because I agree the convictions here involved do not violate double jeopardy. I write separately only to note my continuing disagreement with the rule announced in *People v Robideau,* 419 Mich 458, 504; 355 NW2d 592 (1984) (see dissenting opinion of CAVANAGH, J.).

LEVIN, J. (*dissenting*). The felony-firearm section of the Penal Code provides that "[a] person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, *except the violation of section 227*" (emphasis supplied), is guilty of the offense, and shall be imprisoned for two years.[1] Section 227 proscribes carrying a dangerous weapon "concealed on or about" the person.[2]

Although the felony-firearm section excepts carrying a concealed weapon, defendants Mark A. Sturgis and Charles W. Kester were convicted in separate trials of felonious assault,[3] felony-firearm, *and* carrying a concealed weapon. I would hold that the Legislature did not intend that a person convicted of felony-firearm could be convicted of carrying a concealed weapon on the basis of the same transaction.

In holding that the Legislature intended that a person could be convicted of both felony-firearm

---

[1] MCL 750.227b; MSA 28.424(2).

[2] MCL 750.227; MSA 28.424.

[3] MCL 750.82; MSA 28.277.

and carrying a concealed weapon, the majority observes that felonious assault, rather than carrying a concealed weapon, is the predicate felony in the instant cases.

In every case where the offense of felony-firearm is committed, the defendant will, however, have committed, while carrying or possessing a dangerous weapon, a predicate felony other than the felony of carrying a concealed weapon.

It will be a rare case indeed when a defendant, guilty of felony-firearm, will not also have carried the firearm "concealed on or about his person" and thus also have committed the felony of carrying a concealed weapon.

The majority's construction deprives the statutory exception respecting the offense of carrying a concealed weapon of operational meaning except in the atypical case where the firearm was not at any time during the criminal episode concealed on or about the person of the offender, is contrary to the spirit of the statute, and serves no purpose other than to provide still another area for plea bargaining and to increase the maximum sentence that may be imposed in respect to an underlying offense from four to five years where, as in the instant cases, the maximum sentence for the predicate felony is a relatively low four years.[4]

---

[4] The maximum sentence that may be imposed for carrying a concealed weapon is five years. See n 2. The maximum sentence that may be imposed for felonious assault is four years. See n 3 and MCL 750.503; MSA 28.771. The sentences for both offenses run concurrently.