# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANGELO WEEMS,

        Defendant-Appellant.

UNPUBLISHED
May 5, 2015

No. 319678
Wayne Circuit Court
LC No. 12-011011-FH

Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

PER CURIAM.

Pursuant to a *Cobbs*[1] agreement, defendant pleaded guilty to the charges of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Consistent with the plea agreement, he was sentenced to two years' probation for the felon-in-possession conviction and two years' imprisonment for the felony-firearm conviction. In a timely-filed motion, defendant had sought to withdraw his plea. The trial court denied the motion, and defendant appeals by leave granted. We affirm.

## I. THE PLEA AGREEMENT AND RELATED HEARING

Defendant had been charged with felony-firearm, felon-in-possession, and carrying a concealed weapon, MCL 750.227, accompanied by a fourth-habitual offender notice, MCL 769.12. The plea agreement entailed defendant pleading guilty to the felon-in-possession and felony-firearm charges in exchange for dismissal of the concealed-weapon charge and the habitual notice, along with a promised sentence of two years' imprisonment for the felony-firearm offense and an order of two years' probation for the felon-in-possession offense. At the plea hearing, defendant expressed his approval of this agreement. Defendant was placed under oath and the trial court engaged him in the following colloquy:

    *Trial Court*:    How far did you go in school?

    *Defendant*:    Twelfth grade.

---

[1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

-1-

*Trial Court*: Do you read, write[,] and understand English?

*Defendant*: Yes.

*Trial Court*: You know what's going on here today?

*Defendant*: Yes.

*Trial Court*: This is your signature on the plea form?

*Defendant*: Yes.

*Trial Court*: You went over it with your attorney?

*Defendant*: Yes.

*Trial Court*: Are you satisfied with his services?

*Defendant*: Yes.

. . .

*Trial Court*: [H]ave there been any other promises or agreements made to you outside of this?

*Defendant*: No, sir.

*Trial Court*: You understand, sir, if I accept your plea you will not have a trial?

*Defendant*: Yes.

*Trial Court*: That you will be waiving or giving up the rights listed at the bottom of the plea form?

*Defendant*: Yes.[2]

---

[2] The plea form that defendant acknowledged having read and that listed the rights he was agreeing to waive provided in part:

(1) If the plea is accepted, the defendant will not have a trial of any kind, and so gives up the rights the defendant would have at a trial, including the right:

(a) to be tried by a jury

(b) to be presumed innocent until proven guilty

*Trial Court*:　After waiving those rights, you still wish to plead guilty here?

*Defendant*:　Yes, sir.

*Trial Court*:　Have there been any threats to do that?

*Defendant*:　No, sir.

*Trial Court*:　Any drugs or alcohol affecting you now?

*Defendant*:　No, sir.

Defendant proceeded to testify that, with respect to the date of October 30, 2012, he had possessed a firearm absent a permit, he was a convicted felon, and his right to carry a firearm had not been restored. Defense counsel and the prosecutor then voiced satisfaction with the plea and its factual basis, and the trial court indicated its satisfaction and approval of the plea.

Defendant later moved to have the plea withdrawn prior to sentencing, but the trial court did not entertain and decide a motion to withdraw the plea until after sentencing. Defendant contended that his "waiver of trial rights was invalid as the [c]ourt did not advise him of the right to jury trial, confrontation[,] and silence on the record," that "the written plea form was invalid as the [c]ourt did not use a form approved by the State Court Administrative Office [SCAO] as required by MCR 6.302(B)," and that "the plea was legally involuntary as the state and federal double jeopardy protections should preclude dual convictions for felony-firearm and felon in possession of a weapon." The trial court denied the motion.

---

(c) to have the prosecutor prove beyond a reasonable doubt that the defendant is guilty

(d) to have the witnesses against the defendant appear at the trial

(e) to question the witnesses against the defendant

(f) to have the court order any witnesses the defendant has for the defense to appear at the trial

(g) to remain silent during the trial

(h) to not have that silence used against the defendant and

(i) to testify at the trial if the defendant wants to testify.

Defendant and his attorney signed and dated the document just below this acknowledgement of rights.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review for an abuse of discretion a trial court's ruling on a motion to withdraw a guilty plea, but our review is de novo with respect to related constitutional issues, as well as the interpretation and application of the court rules. *People v Cole*, 491 Mich 325, 329-330; 817 NW2d 497 (2012).

### B. CONSTITUTIONAL REQUIREMENTS AND ARGUMENTS

In *Cole*, the Michigan Supreme Court addressed the requirements of constitutional due process in regard to the entry of a guilty plea and the associated waiver of various constitutional rights, observing:

> A no-contest or a guilty plea constitutes a waiver of several constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Boykin v Alabama*, 395 US 238, 243; 89 S Ct 1709; 23 L Ed 2d 274 (1969); *People v Jaworski*, 387 Mich 21, 28-29; 194 NW2d 868 (1972). For a plea to constitute an effective waiver of these rights, the Due Process Clause of the Fourteenth Amendment requires that the plea be voluntary and knowing. *McCarthy v United States*, 394 US 459, 466; 89 S Ct 1166; 22 L Ed 2d 418 (1969); see also *North Carolina v Alford*, 400 US 25, 31; 91 S Ct 160; 27 L Ed 2d 162 (1970) (noting that a plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant"). In *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970), the United States Supreme Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." [*Cole*, 491 Mich at 332-333 (footnote omitted).]

Here, defendant argues that his plea was constitutionally defective because the trial court failed to explain on the record the constitutional rights that defendant was waiving by accepting the plea agreement. Defendant maintains that "there was no oral advisement of the enumerated trial rights – including the right to jury trial." Defendant solely cites *McCarthy*, 394 US 459, in support of his claim that the trial court was constitutionally required to *orally* advise him of the rights that were being waived.

*McCarthy* examined "the procedure that must be followed under Rule 11 of the Federal Rules of Criminal Procedure before a United States District Court may accept a guilty plea and the remedy for a failure to follow that procedure." *McCarthy*, 394 US at 460. FR Crim P 11 at the time provided that a court could not accept a guilty plea " 'without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequence of the plea.' " *Id.* at 462 n 4, quoting FR Crim P 11, as amended February 28, 1966, and made effective July 1, 1966. When the petitioner entered his guilty plea, the district court had failed to "personally inquire whether petitioner understood the nature of the charge." *McCarthy*, 394 US at 464. The Supreme Court stated that "although the procedure embodied in Rule 11 *has not been held to be constitutionally mandated,* it is designed

-4-

to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *Id.* at 465 (emphasis added; citations omitted). The *McCarthy* Court ultimately set aside the guilty plea, holding that "prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea." *Id.* at 471-472.

Clearly, *McCarthy* did not constitutionally *mandate* oral advisement of the rights being waived by a defendant pleading guilty to a criminal offense. Rather, the Supreme Court indicated that the constitutional touchstone is ultimately whether a plea is knowing and voluntary, and when the federal district court failed to abide by the procedural safeguard of personal inquiry embodied in FR Crim P 11, the voluntariness of the plea could not be accurately determined. It is vitally important to note that *McCarthy* did not involve the petitioner's execution of any document associated with the plea, let alone one comparable to the plea form signed by defendant here.

The record in our case reflected that the trial court did not expressly or orally advise defendant that he was waiving his rights to a jury trial, to the presumption of innocence, to have the prosecutor prove guilt beyond a reasonable doubt, to the privilege against compulsory self-incrimination, to confront accusers, to call witnesses and have them produced as part of his defense, and to testify. While the trial court did not expressly set forth those rights, the court asked defendant whether he understood that he was "waiving or giving up the rights listed at the bottom of the plea form," thereby incorporating by reference those rights into the question being posed to defendant; a question that defendant responded to in the affirmative. This was after defendant had unequivocally indicated that he could read and understand English, that he had reviewed the plea form with counsel, and that he had signed the plea form. Further, defendant replied, "Yes, sir," when asked whether he still wished to plead guilty "[a]fter waiving *those* rights." (Emphasis added). Moreover, all of the rights being referenced were trial-related constitutional rights, and the trial court did expressly or orally inform defendant that with acceptance of the plea, defendant would "not have a trial." In response, defendant indicated that he was aware of and understood that fact. Therefore, even if it cannot be said that defendant was expressly or orally advised of the constitutional rights that he was forgoing in pleading guilty, under the circumstances presented as alluded to above and contained in the record, we conclude that he was adequately advised of his rights and that defendant's plea was constitutionally sound, in that, the plea was voluntary, understanding, intelligent, and knowing.

Contrary to defendant's assertion, our holding is not in conflict with the United States Supreme Court's decision in *Boykin*, 395 US 238, wherein the defendant pled guilty absent any record of questions by the trial court or statements by the defendant regarding the plea. The *Boykin* Court held:

> A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. Admissibility of a confession must be based on a reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant. The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation.

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record. [*Id.* at 242-243 (citations and quotation marks omitted).]

We do not have a silent record. Rather, when the transcript of the plea hearing is examined and considered in conjunction with the plea form signed and acknowledged by defendant, which are both part of the record, it is abundantly clear that defendant was advised of the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront his accusers.

In addition, and again contrary to defendant's position, our holding is not in conflict with the Michigan Supreme Court's ruling in *Jaworski*, 387 Mich 21, wherein the defendant pled guilty and was "advised of two of the three, but not the third [right against self-incrimination], of the three constitutional rights *Boykin* found in a waiver of a guilty plea." *Id.* at 25. Our Supreme Court, in vacating the defendant's plea and conviction, held that "the record must show that the defendant has been informed of each and all of the three constitutional rights he waives on pleading guilty." *Id.* at 30. Here, the "record," which includes the plea-hearing transcript and the plea form, established that defendant was informed of the three constitutional rights alluded to in *Boykin* and *Jaworski*.

In sum, there was no constitutional violation with respect to defendant's guilty plea, as the plea was voluntary, understanding, intelligent, and knowing.

## C.  REQUIREMENTS AND ARGUMENTS UNDER MCR 6.302

MCR 6.302 addresses pleas of guilty and nolo contendere and the requirements of accepting such pleas, providing, in pertinent part, as follows:

(A) The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E).

(B) Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:

. . .

(3) if the plea is accepted, the defendant will not have a trial of any kind, and so gives up the rights the defendant would have at a trial, including the right:

(a) to be tried by a jury;

(b) to be presumed innocent until proved guilty;

(c) to have the prosecutor prove beyond a reasonable doubt that the defendant is guilty;

(d) to have the witnesses against the defendant appear at the trial;

(e) to question the witnesses against the defendant;

(f) to have the court order any witnesses the defendant has for the defense to appear at the trial;

(g) to remain silent during the trial;

(h) to not have that silence used against the defendant; and

(i) to testify at the trial if the defendant wants to testify.

. . .

(5) [The] requirements of subrule[] (B)(3) . . . may be satisfied by a writing on a form approved by the State Court Administrative Office. If a court uses a writing, the court shall address the defendant and obtain from the defendant orally on the record a statement that the rights were read and understood and a waiver of those rights. The waiver may be obtained without repeating the individual rights.

Accordingly, under the court rule and as relevant here, the trial court was required, subject to the application of subrule (B)(5), to speak directly to defendant and advise him of the constitutional rights listed in subrule (B)(3) that he was giving up or waiving by pleading guilty and determine that defendant understood that he was waiving these rights. An argument can be made that the trial court, when speaking to defendant, did advise him of the constitutional rights that were being waived, doing so by verbally incorporating by reference the rights set forth in the plea form when questioning and informing defendant. That said, MCR 6.302(B)(5), which allows a writing to be used to satisfy the requirements of subrule (B)(3), still obligated the trial court to, without repeating the rights, "address the defendant and obtain from the defendant orally on the record a statement that the rights were read and understood and a waiver of those rights." Given the specific colloquy at the plea hearing and the concomitant use of the plea form, it is evident that the trial court was accepting the plea through reliance on subrule (B)(5) with respect to the disclosure and waiver of constitutional rights. Defendant, however, argues that subrule (B)(5) was not an available avenue to obtain a valid waiver of constitutional rights, considering that, while subrule (B)(5) permits compliance with the requirements of subrule (B)(3) through the use of "a writing on a form approved by . . . [SCAO,]" the plea form signed by defendant was not a SCAO-approved form.

The plea form used in this case is one utilized by the courts in the Wayne County Circuit Court and it lacks a stamp or notation specifically indicating that the form is approved by SCAO. The actual SCAO-approved form – "CC 291 (1/06) ADVICE OF RIGHTS (CIRCUIT COURT PLEA)" – sets forth information regarding the constitutional rights being waived, employing

-7-

language that is nearly verbatim, absent any meaningful difference, to the information contained in subsection (1) of the county plea form that was used. See footnote 2, *supra*. Additionally, both the SCAO form and the Wayne County plea form alert a defendant that any appeal is by application for leave to appeal and not by right. Next, the county plea form goes even further, warning a defendant, in language identical to that in MCR 6.302(B)(4), that "[i]f the plea is accepted, the defendant will be giving up any claim that the plea was the result of promises or threats that were not disclosed to the court at the plea proceeding, or that it was not the defendant's own choice to enter the plea." The SCAO-approved form does not include this valuable provision. The only arguably relevant distinction is that the language in the county plea form is in slightly smaller print, yet it is nonetheless easily legible. The smaller print is evidently used because the top part of the plea form contains space to allow entry of a defendant's name, the specific charges, the statutory citation of the charged offenses, the statutory maximum penalty, as must be disclosed under MCR 6.302(B)(2), and the nature and particulars of the specific plea agreement, none of which information is allotted space in the SCAO-approved form. The county plea form is *effectively* "a form approved by" SCAO, MCR 6.302(B)(5), with some additional warnings consistent with and mandated by law and some spacing to allow for the entry of information regarding a specific case. We find that the county plea form is compliant with subrule (B)(5).

Furthermore, assuming a lack of full compliance, the county plea form substantially complied with MCR 6.302(B)(5). In *People v Plumaj*, 284 Mich App 645, 649; 773 NW2d 763 (2009), this Court observed:

> Strict compliance with MCR 6.302 is not essential; rather, our Supreme Court has "adopted a doctrine of substantial compliance, holding that 'whether a particular departure from Rule 785.7 [now MCR 6.302] justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance.'" [*People v*] *Saffold*, [465 Mich 268, 273; 631 NW2d 320 (2001)] . . ., quoting *Guilty Plea Cases*, 395 Mich 96, 113; 235 NW2d 132 (1975). Automatic reversal is required only when the trial court fails to procure "an enumeration and a waiver on the record of the three federal constitutional rights as set forth in *Boykin* . . .: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers." *Saffold, supra* at 281. This Court may consider "the record as a whole" to determine whether the *Boykin* requirements were satisfied and whether a guilty plea was made knowingly and voluntarily. *People v Bettistea (After Remand)*, 181 Mich App 194, 197; 448 NW2d 781 (1989). [First set of brackets in original[3].]

Here, assuming noncompliance, the nature of the noncompliance was entirely insignificant for the reasons discussed above; therefore, there was substantial compliance with MCR 6.302(B)(5) and thus no basis for reversal under the court rule. We also note the following statement in *Saffold*, a case in which the defendant was not informed of the right to the

---

[3] We have already determined and held that the *Boykin* requirements were satisfied based on the record as a whole.

presumption of innocence as required by MCR 6.302 and wherein our Supreme Court recognized the substantial-compliance doctrine and reinstated the defendant's guilty plea:

> [T]he question on appeal is whether it appears on the record that the defendant was informed of such constitutional rights and incidents of a trial as is reasonable to warrant the conclusion that he understood what a trial is and that by pleading guilty he was knowingly and voluntarily giving up his right to a trial and such rights and incidents. [*Saffold*, 465 Mich at 273.]

We hold that in the case at bar, the record supports the finding that defendant was informed of his constitutional rights and the incidents of a trial as was reasonable to warrant the conclusion that he understood the nature of a trial and that by pleading guilty he was knowingly and voluntarily giving up his right to a trial and such rights and incidents.

Finally, we note that defendant presents an argument under MCR 6.402(B), which addresses waiver of a jury trial and record requirements; however, the provision is applicable in the context of a situation in which a defendant is going to trial but has opted for a bench or waiver trial instead of a trial by jury. See MCR 6.401 ("The defendant has the right to be tried by a jury, or may, with the consent of the prosecutor and approval by the court, elect to waive that right and be tried before the court without a jury."). MCR 6.302 governs the analysis with respect to plea agreements, not MCR 6.402.[4] Accordingly, defendant's argument is unavailing.

## D. DOUBLE JEOPARDY IMPLICATIONS

Lastly, defendant argues that the plea agreement should be set aside because a conviction for both felony-firearm and felon-in-possession violates the constitutional protections against double jeopardy, US Const, Am V; Const 1963, art 1, § 15. The Michigan Supreme Court rejected this precise argument in *People v Calloway*, 469 Mich 448; 671 NW2d 733 (2003). The Court noted that the issue concerned the multiple-punishments prong or strand of double jeopardy and that the analysis of this prong solely involved determining whether the Legislature had intended to authorize cumulative punishments. *Id.* at 450-451. The *Calloway* Court opined that with respect to the felony-firearm statute, MCL 750.227b, the Legislature intended to provide for an additional felony charge and sentence when a defendant possessed a firearm and committed a felony, other than one of the four enumerated felonies in MCL 750.227b. *Id.* at 452.[5] The Court then held:

---

[4] Defendant makes an analogous argument under MCL 763.3(1), but that also pertains to a situation in which a defendant, "with the consent of the prosecutor and approval by the court, waive[s] a determination of the facts by a jury and elect[s] to be tried before the court without a jury."

[5] Subsection (1) of MCL 750.227b, the felony-firearm statute, provides, in part, that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of [MCL 750.223, MCL 750.227, MCL 750.227a, or MCL 750.230] . . . is guilty of a felony, and shall be imprisoned for 2 years."

Because the felon in possession charge is not one of the felony exceptions in the statute [MCL 750.227b(1)], it is clear that defendant could constitutionally be given cumulative punishments when charged and convicted of both felon in possession, MCL 750.224f, and felony-firearm, MCL 750.227b. Because there is no violation of the double jeopardy clause, the Court of Appeals properly affirmed defendants convictions. In lieu of granting leave to appeal, we affirm the judgment of the Court of Appeals on this point. [*Id.*]

Defendant argues that *Calloway* was wrongly decided. However, "it is well established that this Court is bound by stare decisis to follow the decisions of the Supreme Court." *Charles A Murray Trust v Futrell*, 303 Mich App 28, 48; 840 NW2d 775 (2013). Defendant also contends that our Supreme Court's ruling in *People v Smith*, 478 Mich 292; 733 NW2d 351 (2007), overruled or modified the analytical framework applied in *Calloway*. While we agree with this proposition, reversal is still unwarranted.

The *Calloway* Court relied on the analysis in *People v Sturgis*, 427 Mich 392; 397 NW2d 783 (1986). *Calloway*, 469 Mich at 450-451. And the *Sturgis* Court, which held that, "[i]n sum, where the issue is the propriety of multiple punishments in a single trial, our obligation is to determine what punishment the Legislature has authorized[,]" relied heavily on *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984). *Sturgis*, 427 Mich at 400-411. However, the *Smith* Court ruled that "we feel compelled to overrule *Robideau* and preceding decisions that are predicated on the same error of law, and to hold instead that *Blockburger*[6] sets forth the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15." *Smith*, 478 Mich at 315. Our Supreme Court in *Smith* held:

We conclude that in adopting Const 1963, art 1, § 15, the ratifiers of our constitution intended that our double jeopardy provision be construed consistently with then-existing Michigan caselaw and with the interpretation given to the Fifth Amendment by federal courts at the time of ratification. We further conclude that the ratifiers intended that the term "same offense" be given the same meaning in the context of the "multiple punishments" strand of double jeopardy that it has been given with respect to the "successive prosecutions" strand. . . . At the time of ratification, we had defined the language "same offense" in the context of successive prosecutions by applying the federal "same elements" test. In interpreting "same offense" in the context of multiple punishments, federal courts first look to determine whether the legislature expressed a clear intention that multiple punishments be imposed. Where the Legislature does clearly intend to impose such multiple punishments, imposition of such sentences does not violate the Constitution, regardless of whether the offenses share the "same elements." Where the Legislature has not clearly expressed its intention to authorize multiple punishments, federal courts apply the "same elements" test of *Blockburger* to determine whether multiple punishments are permitted. Accordingly, we conclude that the "same elements" test set forth in *Blockburger*

---

[6] *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

best gives effect to the intentions of the ratifiers of our constitution. [*Smith*, 478 Mich at 315-316 (citations and quotation marks omitted).]

Subsection (2) of the felony-firearm statute, MCL 750.227b, provides that "[a] term of imprisonment prescribed by this section *is in addition to* the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony." (Emphasis added). Because felon-in-possession is a permissible underlying felony for purposes of felony-firearm, MCL 750.227b(1), and because subsection (2) of the statute specifically provides for punishment of both crimes, indeed consecutively, the Legislature clearly expressed its intention to authorize multiple punishments for the two firearm offenses. Moreover, even assuming the lack of a clearly expressed intent to authorize multiple punishments for felony-firearm and felon-in-possession and the need to apply the *Blockburger* same-elements test, defendant's double jeopardy protections would not be infringed. In applying the test, the *Smith* Court ruled that "[b]ecause each of the felonies of which defendant was convicted, first-degree felony murder and armed robbery, has an element that the other does not, they are not the 'same offense' under either Const 1963, art 1, § 15 or US Const, Am V." *Smith*, 478 Mich at 324. The offense of felon-in-possession requires that a defendant be an existing felon when possessing a firearm in order to be convicted, which is not required with felony-firearm. MCL 750.227b; MCL 750.224f. And felony-firearm requires that a defendant possess a firearm during the commission of a felony, while felon-in-possession does not require the commission of a felony, although a felony is effectively committed when a felon possesses a firearm. *Id.* This is very comparable to the felony-murder and underlying-felony analysis in *Smith*. In sum, there was no double jeopardy violation in accepting the plea agreement.

### III.  CONCLUSION

The plea agreement and the related proceeding did not result in a violation of defendant's due process rights relative to pleas and the waiver of associated constitutional rights, did not result in a violation of the applicable court rule, MCR 6.302, and the agreement did not infringe on defendant's right to be free from twice being placed in jeopardy. Accordingly, the trial court did not err in denying defendant's motion to withdraw the guilty plea.

Affirmed.

/s/ Michael J. Talbot
/s/ William B. Murphy
/s/ Elizabeth L. Gleicher

-11-